

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2006

# Vasquez v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3510

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Vasquez v. Atty Gen USA" (2006). *2006 Decisions.* Paper 75.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/75

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3510

———

JOSE VASQUEZ,
*Petitioner*

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
*Respondent*

———

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
BIA No. A38-886-784
(Honorable Grace A. Sease, Immigration Judge)

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 12, 2006

Before: FUENTES and VAN ANTWERPEN, *Circuit Judges*, and PADOVA,*
*District Judge*.

(Filed December 19, 2006)

———

OPINION OF THE COURT

———

———

*The Honorable John R. Padova, District Judge of the Eastern District of Pennsylvania,
sitting by designation.

VAN ANTWERPEN, *Circuit Judge*.

Petitioner Jose Vasquez, a native and citizen of the Dominican Republic, seeks review of the March 7, 2005, Order of the Board of Immigration Appeals ("BIA") that affirmed without opinion the Immigration Judge's ("IJ") denial of his application for relief. We have jurisdiction to review the petition pursuant to 8 U.S.C. § 1252(a), and for the reasons set forth below, we will deny the petition.

I.

Because we write solely for the benefit of the parties, we will set forth only those facts necessary to our analysis.

Vasquez was admitted to the United States as an immigrant in 1984. In 1998, he was arrested after taking possession of five kilograms of sham cocaine from an undercover officer. Shortly after being released on bail, Vasquez fled to the Dominican Republic, where he stayed for approximately two years. In May 2000, just before his $200,000 bond was to be forfeited, he returned to the U.S. and turned himself in to authorities. In January 2001, he pled guilty in federal court to conspiracy to possess with intent to distribute cocaine and was sentenced to 57 months in prison. In April 2004, the Immigration and Naturalization Service issued a Notice to Appear charging Vasquez with being subject to removal from the United States based upon his conviction of an aggravated felony, as defined under the Immigration and Nationality Act, and his conviction of a violation of a controlled substance law. In July 2004, the Bureau of

2

Immigration and Customs Enforcement took Vasquez into custody.

Vasquez filed applications for asylum, withholding of removal, and relief under the Convention Against Torture. In October 2004, at a hearing on the merits of his applications, Vasquez testified that he feared being tortured if he were to be sent back to the Dominican Republic. He explained that he had been an informant for the Federal Bureau of Investigation ("FBI") after being arrested in 1998, and that he had agreed to testify against Miguel Angelo Silva and Paco Silva, the brothers for whom Vasquez was to unknowingly transport the five kilograms of cocaine. He further testified that he fled to his brother's house in the Dominican Republic in 1998 because of threats made against his life in connection with his agreement to cooperate with authorities. Vasquez also stated that, in 1999 or 2000, his cousin saw Paco Silva and five police officers search for Vasquez at Vasquez's home in the Dominican Republic. Because of this incident and Paco Silva's wealth and connections with the police, Vasquez fears being killed or tortured should he be returned to the Dominican Republic.

The IJ who presided over the hearing found Vasquez removable as charged. She denied his applications for asylum and withholding of removal after finding that Vasquez's drug conviction was a "particularly serious crime" under 8 U.S.C. § 1158(b)(2)(A)(ii) (stating that the Attorney General may deny withholding of removal to a petitioner who has "been convicted by a final judgment of a particularly serious crime"). She also denied Vasquez's petition for withholding pursuant to the Convention

3

Against Torture.  Overall, she did not find that Vasquez's story had sufficient indicia of credibility.  He presented no evidence supporting his claims that he had cooperated with the FBI, was working for the Silva brothers at the time of his arrest, or had been threatened by the Silva brothers.  He also produced no evidence supporting his claims that Paco Silva and five police officers had visited his home in the Dominican Republic.  Finally, the IJ found that Vasquez's credibility was harmed by his fleeing the country and remaining a fugitive of the law for nearly two years.

The BIA affirmed the IJ's decision without opinion in March 2005.  Vasquez, through counsel, filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania challenging the IJ's and BIA's decisions.  The District Court stayed Vasquez's removal, and transferred the petition to this Court to be treated as a petition for review under the Real ID Act of 2005, Pub.L. 109-13.

## II.

In his petition for review, Vasquez challenges the removal decision on three grounds.  First, he claims the IJ committed legal error in applying and interpreting the U.S. Attorney General's decision in *Matter of Y-L-, A-G-, R-S-R*, 23 I. & N. Dec. 270, 2002 WL 358818 (A.G. 2002) and analyzing his torture claim.  Second, he claims he is not subject to removal because he is a national of the United States.  Finally, he asserts his removal is barred by the "state-created danger exception."

4

*A. The Torture Claim*

Vasquez asserts the IJ erred in interpreting *Matter of Y-L-, A-G-, R-S-R* as an absolute bar to any and all torture claims from Dominican nationals. Because of this flawed interpretation, he claims the IJ did not appropriately consider evidence that shows it is more likely than not that Vasquez will be tortured upon his return.

"When the BIA affirms an IJ without opinion, we review the IJ's opinion..." *Butt v. Gonzales*, 429 F.3d 430, 433 (3d Cir. 2005) (internal quotation marks and citation omitted). We review the opinion under the substantial evidence standard. *See Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir. 2003). Under this standard, the decision must be affirmed if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)). Furthermore, the IJ's findings must be upheld "unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir. 2001).

To establish a claim for protection under the Convention Against Torture, the applicant must meet a two-part test. First, it must be "more likely than not" that he will be tortured if removed to the proposed country. 8 C.F.R. § 208.16(c)(2). And second, the feared torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R.

5

§ 208.18(a)(1). In assessing the probability of the applicant being tortured, the following factors are relevant: (1) "evidence of past torture inflicted upon the applicant;" (2) "evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;" and (3) "evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable." 8 C.F.R. § 208.16(c)(3)(i)-(iii). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.16(c)(2).

Vasquez asserts the IJ read the Attorney General's decision in *Matter of Y-L-, A-G-, R-S-R* as suggesting that "no one from the Dominican Republic can ever establish a claim for protection under the UN Convention Against Torture." Vasquez's Brief at 30. *Matter of Y-L-, A-G-, R-S-R* analyzes, among other things, whether drug crimes constitute "particularly serious crimes" for the purpose of the Immigration and Nationality Act. Coincidentally, *Matter of Y-L-, A-G-, R-S-R* involved a petitioner very similar to Vasquez: a Dominican national who had pled guilty to a federal drug charge, served as an informant to federal agents, and petitioned for asylum, withholding of removal, and Convention Against Torture protection. In her discussion of Vasquez's petitions, the IJ cited *Matter of Y-L-, A-G-, R-S-R* a total of three times and always in connection with Vasquez's petition for asylum and withholding of removal under the Immigration and Nationality Act. She relied on the case to support her conclusion that Vasquez's drug trafficking offense constituted a "particularly serious crime" and that his applications for

6

asylum and withholding of removal should be denied.  In her analysis of Vasquez's

Convention Against Torture application, the IJ neither cited nor relied upon *Matter of Y-L-, A-G-, R-S-R.*  Accordingly, we find Vasquez's assertion that the IJ interpreted *Matter of Y-L-, A-G-, R-S-R* as an absolute bar to his Convention Against Torture petition without merit.

Vasquez also asserts the IJ did not appropriately consider his Convention Against Torture petition.  Specifically, he claims the IJ based her adverse credibility finding exclusively on her perception that Vasquez did not note his fear of torture until the day of the hearing.  In addition, Vasquez claims the IJ did not consider his personal circumstances or the Department of State's Country Report on the Dominican Republic in determining the likelihood of his being tortured.

Even though the IJ may have erred in finding that Vasquez first noted his fear of torture minutes before his hearing, we find the evidence in the record sufficient to support the IJ's ultimate determination.  In supporting her finding that Vasquez lacked credibility, the IJ noted the following: (1) a lack of any mention in Vasquez's pre-sentence investigation report of the Silva brothers (despite the inclusion in the report of the names of other co-conspirators); (2) Vasquez's history as a fugitive; (3) Vasquez's failure to produce any evidence supporting his claim that he had been an informant for the FBI; and (4) Vasquez's failure to produce any evidence corroborating his testimony that he had been threatened or that Paco Silva had visited Vasquez's Dominican home. Overall,

7

we find that substantial evidence supports the IJ's credibility finding.

Furthermore, we agree with the IJ that Vasquez did not support his claim that it is "more likely than not" that he will be tortured with the acquiescence of a public official if he returns to the Dominican Republic. First, there is no evidence of past torture. Vasquez lived in the Dominican Republic for two years following his cooperating with federal agents and was not harmed.[1] Second, Vasquez presented no evidence that he will likely be tortured if he returns. He claims he will be tortured in a Dominican prison because he is a deportee from the United States. He points to no specific evidence, however, that shows Dominican deportees from the U.S. are often imprisoned and tortured because of their status as deportees. Finally, he offers little evidence that the government would acquiesce to his torture. The only support he provides for this assertion is an unverified account from his cousin that police accompanied Paco Silva to Vasquez's house and his own belief that the Silva brothers can bribe police officials. Overall, Vasquez did not meet his burden of proving that he is "more likely than not" to be tortured with the acquiescence of a public official if he is returned to his native land.

B. *Vasquez as a "National"*

Vasquez claims he is not subject to removal because he is a "national" of the United States. As a result, he asserts the Executive Office for Immigration Review has

---

[1] We find it curious that, when Vasquez's life was threatened in 1998 by the Silvas, he thought it safer to live in the Dominican Republic with his brother than remain in the U.S.

8

no jurisdiction under the Immigration and Nationality Act to order his removal.

Because this Court considered and rejected Vasquez's claim that he is a national in an earlier appeal, we need not reconsider it. *See Vasquez v. Immigration and Customs Enforcement*, 160 Fed. Appx. 199, 2005 WL 3481523 (3d Cir. 2005) (finding "Vasquez...is not a national.").

*C. The "State-Created Danger Exception"*

Finally, Vasquez argues the U.S. government has an affirmative duty to protect him because the risk of his being tortured arises from the assistance he provided to federal agents.

Generally, the state has no obligation to protect individuals from harm inflicted by third parties. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). However, as this Court explained in *Kamara v. Attorney General*, "we have recognized a 'state-created danger exception,' such that the government has a constitutional duty to protect a person against injuries inflicted by a third-party when it affirmatively places the person in a position of danger the person would not otherwise have faced." 420 F.3d 202, 216 (3d Cir. 2005).

Despite Vasquez's contentions, *Kamara* explicitly declined to recognize the state-created danger exception in the immigration context. This Court determined that extending the exception in this way, "would impermissibly tread upon the Congress' virtually exclusive domain over immigration, and would unduly expand the contours of

9

our immigration statutes and regulations, including the regulations implementing the [Convention Against Torture]." *Id*. at 217-18. Based on this precedent, we reject Vasquez's claim for relief under the state-created danger exception.

## III.

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the foregoing reasons, we conclude that substantial evidence supports the IJ's denial of Vasquez's petition and will deny the petition for review.